UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:20-cv-24443-BB

FLORIDA FAIR HOUSING ALLIANCE, INC.,

    Plaintiff,
vs.

SUNRISE HARBOUR MULTIFAMILY, INC.,
d/b/a SUNRISE HARBOUR,

    Defendant.
_____/

### DEFENDANT SUNRISE HARBOUR MULTIFAMILY, INC.'S
### MOTION TO DISMISS FIRST AMENDED COMPLAINT

Defendant Sunrise Harbour Multifamily, Inc. ("Sunrise Harbour"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6), and Local Rule 7.1(a), moves to dismiss Plaintiff Florida Fair Housing Alliance's ("FFH Alliance") First Amended Complaint ("FAC") [DE 5] for lack of subject matter jurisdiction and for failure to state a claim.

### Introduction

FFH Alliance filed the FAC on November 19, 2020, alleging a single count of disparate impact discrimination under Section 3604(d) of the federal Fair Housing Act. According to the FAC, the FFH Alliance "tested" Sunrise Harbour, an apartment community, for discriminatory housing practices by having a "field tester" [1] place a single phone call on September 30, 2019. *See* FAC at ¶¶ 14-15. During this single phone call, FFH Alliance claims that its "field tester" was told that rental property was available, but that his application would be denied if he was a convicted

---

[1] The "field tester" is Ryan Turizo, a convicted felon, serial litigant, and FFH Alliance's president/incorporator. Since August 2019, Mr. Turizo has filed, at first individually and then through Plaintiff FFH Alliance, more than two dozen substantially identical Fair Housing Act lawsuits based on criminal background checks in this district.

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900 F. 305·858·5261

felon. *Id.* at ¶ 16. In FFH Alliance's view, this single phone call shows that Sunrise Harbour has a "latent discriminatory practice and/or policy" of refusing to rent to convicted felons, which, in turn, has a disparate impact on Black and Hispanic individuals under Section 3604(d). *Id.* at ¶¶ 36-39.

Of course, Sunrise Harbour has no such policy or practice, and the FAC's threadbare allegation does not establish otherwise. But even without reaching the substance (or lack thereof) of FFH Alliance's claim, the FAC must be dismissed because FFH Alliance **did not exist** on September 30, 2019, when the complained-of conduct allegedly occurred. See Ex. A, Articles of Incorporation for FFH Alliance. There is no theory of standing allowing a company to sue for an event that allegedly occurred five months before its formation. Further, although FFH Alliance has not sought leave to amend further, or otherwise to substitute the "field tester" in its stead, such relief would be futile because the FAC does not state a claim for disparate impact housing discrimination. The FAC should be dismissed without leave to amend.

## **Applicable Legal Standards**

### I.     **Lack of Standing under Rule 12(b)(1)**

Dismissal is required when the court determines that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3). A party may move to dismiss for lack of subject matter jurisdiction under Rule 12(b)(6) by either facial or factual attack. *McElmurry v. Consolidated Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2008). While a facial attack merely requires the court to see whether the pleading has sufficiently alleged a basis for subject matter jurisdiction, and the pleading's allegations are taken as true for purposes of a facial attack, a factual attack uses extrinsic evidence to challenge the existence of subject matter jurisdiction. *Id.* When jurisdiction

is properly challenged, the plaintiff bears the burden for establishing subject matter jurisdiction. *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002).

Because standing is jurisdictional, the Court must determine whether a plaintiff has established standing before it may consider other issues. *ACLU of Fla. v. Dixie Cty., Fla.*, 690 F.3d 1244, 1247 (11th Cir. 2012). A defendant may attack standing, and hence subject matter jurisdiction, through a Rule 12(b)(1) motion. *Region 8 Forest Serv. Timber Purchasers Council v. Alock*, 993 F.2d 800, 807 n. 8 (11th Cir. 1993). The court may consider extrinsic evidence in a 12(b)(1) factual attack on subject matter jurisdiction without converting the motion to dismiss into a motion for summary judgment. *Id.*

To establish Article III standing, a plaintiff must show that (1) it has suffered an "injury in fact' that is concrete and particularized and actual or imminent, i.e., not conjectural or hypothetical; (2) there is a causal connection between the injury complained of and some conduct that is fairly traceable to the defendant, rather than a third party not before the court; and (3) it is likely, and not merely speculative, that the injury will be redressed by a favorable ruling. *Lujan v. Defenders of Wildlife*, 504 U.S. 555-560-61 (1992).

An organization may establish standing by showing harm to the organization itself (organizational standing) or to a member or members (associational standing). *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1249 (11th Cir. 2020). Both the Supreme Court and the Eleventh Circuit have set specific pleading requirements for organizations seeking to sue on their own behalf.[2] In *Sierra Club v. Morton*, 405 U.S. 727, 740 (1972), the Supreme Court held that

---

[2] The FAC does not allege that FFH Alliance is a membership organization, or that it is suing on behalf of an identified member or members. Indeed, as shown herein, FFH Alliance could not have had "members" to sue on behalf of, as it did not exist in September of 2019. Accordingly, FFH Alliance cannot proceed under an associational standing theory either. *See Common Cause/Georgia v. Billups*, 554 F. 3d 1350 (11th Cir. 2009).

organizations seeking "to do no more than vindicate their own value preferences through the judicial process" generally cannot establish standing. After *Sierra Club,* the Supreme Court held in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982), that an organization may establish Article III standing if it shows "a concrete and demonstrable injury to the organization's activities" that is "more than simply a setback to the organization's abstract interests."

Expanding on *Havens*, the Eleventh Circuit has explained that organizational standing requires the pleader to show that "the defendant's *illegal acts* impair its ability to engage in its projects by forcing the organization to devote resources to counteract those illegal acts." *Common Cause/Georgia v. Billups*, 554 F.3d 1350 (11th Cir. 2009) (emphasis added). The organization's diverted resources must be independent of the cost of detecting and challenging allegedly unlawful conduct. *Florida State Conference of N.A.A.C.P. v. Browning*, 522 F.2d 1153, 1166 (11th Cir. 2008) ("plaintiffs cannot bootstrap the cost of detecting and challenging illegal practices into injury for standing purposes").

## II. Failure to State a Claim for Disparate Impact Discrimination under Section 3604(d) of the federal Fair Housing Act

Without "a short and plain statement of the claim showing that the pleader is entitled to relief," a pleading is subject to dismissal for failure to state a claim if "a cause of action does not contain specific factual matter, accepted as true, to state a claim that is plausible on its face and to suggest the required elements of the claim." Fed. R. Civ. P. 8(a)(2); Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, a complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007); *Iqbal*, 556 U.S. at 678 (Rule 8's pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). So while the court must accept the complaint's

allegations as true and make all plausible inferences in the plaintiff's favor, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

Section 3604(d) of the federal Fair Housing Act prohibits discriminatory misrepresentations that available housing is unavailable. 42 U.S.C. § 3604(d) (unlawful "to represent to any person because of race, color, religion, sex, handicap, familial status, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available").

Disparate impact actions challenge policies or practices that "have a 'disproportionately adverse effect on minorities' and are otherwise unjustified by a legitimate rationale." *Texas Department of Housing & Community Affairs v. Inclusive Communities Project, Inc.,* 576 U.S. ----, 135 S. Ct. 2507, 2513 (2015). Claims of disparate impact discrimination under the FHA are subject to heightened pleading standards. In *Inclusive Communities*, the Supreme Court held that racial imbalance, standing alone, does not establish a prima facie claim of disparate impact housing discrimination. *Id.* To protect defendants from racial imbalances they were not responsible for, the Supreme Court directed lower courts to "examine with care whether a plaintiff has made out a prima facie case of disparate impact," holding that a plaintiff "who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection [between a challenged policy and racial imbalance] or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact." *Id.* at 2523-24.

Put simply, "[i]f a statistical discrepancy is caused by factors other than the defendant's policy, a plaintiff cannot establish a prima facie case, and there is no liability." *Id.* at 2523. So, to meet this heightened pleading standard, and protect defendants from liability for disparities they did not create, the plaintiff must plead a *robust causality* between the claimed practice and the

alleged disparity. *Schwarz v. City of Treasure Island*, 544 F.3d 1201 (11th Cir. 2008) (plaintiff who relied on "bald assumption" about policy's impact failed to make prima facie showing of Fair Housing Act disparate impact claim); *Oviedo Town Ctr. II, L.L.L.P v. City of Oveido, Fla.*, 759 F. App'x 828 (11th Cir. 2018) (same); *Carson v. Hernandez*, 3:17-CV-1493, 2018 WL 5624198 at *2-3 (N.D. Tex. Jul. 26, 2018), *report and recommendation adopted at* 2018 WL 5620513 (N.D. Tex. Oct. 30, 2018) (citing *Inclusive Communities*, 135 S. Ct. at 2513) (granting 12(b)(6) motion to dismiss disparate impact action for failure to plead causality); *Inclusive Communities Project, Inc. v. Heartland Cmty. Ass'n, Inc.*, 399 F. Supp.3d 657, 667 (N.D. Tex. 2019) (granting 12(b)(6) motion to dismiss disparate impact housing discrimination claim for failure to plead robust causation between policy and statistical racial disparities); *see also Mandala v. NTT Data, Inc.*, 2019 WL 3237361 at *3-4 (W.D.N.Y. Jul. 18, 2019) (granting 12(b)(6) motion to dismiss disparate impact discrimination claim when pleading relied on general population statistics borrowed from EEOC guidance).

### Argument

**I.     The FAC Lacks Allegations of Ultimate Fact Showing FFH Alliance's Standing to Sue.**

Nothing in the law or in logic permits FFH Alliance to sue for alleged conduct that predated its existence by nearly five months. *See* Ex. A. It is undisputed the FFH Alliance did not exist on September 30, 2019, the date of the single alleged phone call. *See* Ex. A; FAC at ¶¶ 14-15. A non-existent entity has no projects to engage in, nor resources to divert. Accordingly, there is no plausible theory of injury-in-fact that could allow FFH Alliance to maintain this action. These same defects also preclude FFHA Alliance from establishing causation and redressability.

FFH Alliance's standing defects are not remediable if the "field tester" were substituted as the party plaintiff, or if the FAC's allegations were amended to base FFH Alliance's standing on

his capacity to sue. In a recent order dismissing nearly-identical action by FFH Alliance on standing grounds, Judge Scola observed that, consistent with the Supreme Court's holding in *Havens*, a field tester who is provided with accurate information about the availability of housing does not have standing to sue under Section 3604(d). *Florida Fair Housing Alliance, Inc. v. Park East-West Ltd.*, Case No. 1:20-cv-21976, 2020 WL 5236900 at *3.[3] Here, as in *Park-East West*, FFH Alliance is suing under Section 3604(d), and alleges that the "field tester" was told that housing was available. *Id.*; FAC at ¶ 16. Accordingly, the "field tester" has no standing to sue in his own right, and he was not a "member" of a non-existent organization when he placed the phone call. Accordingly, leave to amend, if sought, should be denied as futile.

**II.   The FAC Otherwise Fails to State a Claim for Disparate Impact Discrimination under Section 3604(d).**

The FAC merely recites the general elements of a prima facie case of disparate impact discrimination under *Inclusive Communities*, but does not provide any factual support for (1) the existence of a facially neutral policy, (2) unlawful discriminatory effects, (3) racial disparity in housing applications, or (4) the required "robust causality" between any alleged policy or practice and a racial disparity. So, even apart from the fatal standing defects identified above, the FAC should also be dismissed without leave to amend for failure to state a claim.

**A.  The FAC does not allege a facially neutral policy or practice.**

FFH Alliance's discrimination claim is based on a lone statement allegedly made during a single cold-call about rental housing. Compl. at ¶ 16. Again, to be clear, Sunrise Harbour's application policies are fully compliant with the Fair Housing Act, and the property does not deny

---

[3] Testers do not have standing to sue under Section 3604(a), governing discriminatory refusals to rent or sell, because Section 3604(a) requires a "bona fide offer" to rent or purchase. 42 U.S.C. § 3604(a); *Havens*, 455 U.S. at 363 (noting that testers, by definition, do not have a "bona fide" intention of buying or renter, and therefore lack standing under Section 3604(a)).

rental applications solely on the basis of felony convictions. But because, the FAC's factual allegations must be taken as true at the pleading stage, this single alleged incident does not, and cannot, establish an actionable policy or practice for disparate impact purposes.

Unlike disparate *treatment* claims,[4] which can proceed based on a single alleged encounter, misconduct must be "more than isolated to rise to the level of actionable pattern or practice" for disparate *impact* claims. *United States v. Fountainbleau Apartments L.P.*, 566 F. Supp.2d 726, 733 (E.D. Tenn. 2008); *see also Inclusive Communities*, 135 S. Ct at 2523 (noting that "a one-time decision may not be a policy at all" for disparate-impact purposes). Indeed, the existence of an identifiable, facially neutral policy or practice is a threshold foundation of disparate impact liability under federal anti-discrimination statutes. *See*, *e.g.*, *Roy v. Board of Cty. Comm'rs*, 607 F. Supp.2d 1297, 1308 (N.D. Fla. 2009) (facially neutral policy is a necessary element of any FHA prima facie case); *Radtka v. Wal-Mart Stores*, 2019 WL 9075961 at *4 (S.D. Fla. Oct. 11, 2019) (Title VII employment discrimination claim requires identification of "facially neutral aspects of practice or policy that have resulted in the purportedly adverse impacts"); *Meacham v. Knolls Atomic Power Laboratory*, 554 U.S. 84, 100-01 (2008) (ADEA disparate impact plaintiff must identify a "specific practice" allegedly responsible for disparities). Accordingly, the single phone call does not, and cannot, constitute a "policy" or "practice" for disparate treatment purposes.

Beyond the single phone call, the FAC is devoid of factual allegations establishing the existence of a policy or practice - facially neutral or otherwise. There is no allegation that the "field

---

[4] Disparate treatment claims, such as unlawful steering, require pleading and proof of intentional discrimination. *See, e.g., Massaro v. Mainlands Section 1 & 2 Civic Ass'n, Inc.*, 3 F.3d 1472, 1476 n. 6 (11th Cir. 1993). FFH Alliance's allegation that Sunrise "steers" convicted felons from its property, Compl. ¶ 21, does not establish a disparate treatment claim, as there are no allegations of intentional discrimination; or that the "field tester" was otherwise qualified to rent; or that he was told not to apply despite being qualified to do so; or that a member of a non-protected class was given preferential treatment.

tester," or anyone else, had a rental application denied based on a felony conviction. Here, as the *Roy* court held, "there can be no discriminatory impact of a facially neutral policy to consider if none is alleged." *Roy*, 607 F. Supp.2d at 1308; *see also Coe v. Yellow Freight Sys., Inc*. 646 F.2d 444, 451 (10th Cir. 1981) ("There has not been an allegation that the company systematically followed a practice or procedure . . . which is discriminatory in effect. . . . In any event, discriminatory impact cannot be established where you have just one isolated decision."); *Bryant Woods Inn, Inc. v. Howard Cty., Md.*, 911 F. Supp. 918, 940 (D. Md. 1996) (applying *Coe* to disparate impact FHA claim). Further, the FAC's allegation that its "field tester" was told that housing was *available* forecloses relief under Section 3604(d), which prohibits discriminatory misrepresentations that available housing is *unavailable*. FFH Alliance should not be permitted to re-package this claim via a second amendment.

### B. The FAC does not allege facts establishing robust causality between a policy or practice and a racial disparity

Much like the failed disparate impact claim in the Eleventh Circuit's *Schwarz* decision, the FAC alleges no comparative data showing that a protected class is impacted – let alone disproportionately impacted – by an alleged "policy" or "practice. *Schwarz*, 544 F.3d at 1217-18. This is because Sunrise Harbour absolutely does not have a policy or practice of denying rentals to people with criminal histories. Instead, the FAC contains a bare conclusion that Sunrise has a "practice" that "has a disparate impact on Black and Hispanic individuals." FAC at ¶ 21. This is precisely the sort of "bald assumption" that runs afoul of *Iqbal, Twombly* and *Schwarz*.

In an apparent effort to paper over the absence of factual allegations showing causation, the FAC is replete with citations to a 2016 Department of Housing and Urban Development guidance document ("HUD Guidance"). But nothing in the HUD Guidance helps FFH Alliance establish the "robust causality" necessary for a disparate impact claim. The HUD Guidance does

not even say that blanket denials of rental applications to convicted felons (not that Sunrise has such a policy) violate the FHA. All the HUD Guidance says is that a policy or practice of blanket denials (like any other challenged policy) *shown to have a discriminatory effect* would violate the FHA. Neither the FAC nor the HUD Guidance provides the causal link required by *Inclusive Communities, Schwarz* or *Oviedo*.

Additionally, the FAC ignores authority subsequent to the HUD Guidance that clarifies and explains when blanket denial policies are permissible. The HUD Guidance relies upon the Eighth Circuit's decision in *Green v. Missouri Pac. R.R. Co.*, 523 F.2d 1290 (8th Cir. 1975), for the proposition that blanket denials for "any conviction," which would include misdemeanors, are overbroad and could support a disparate impact claim. HUD Guidance, Ex. A to FAC, at p. 6. After the HUD Guidance was published, the Eighth Circuit clarified the *Green* holding in *Eggers v. Wells Fargo Bank N.A.*, 899 F.3d 629, 634-35 (8th Cir. 2018), holding that a blanket denial for employment applicants convicted of theft crimes did not support a prima facie claim for disparate impact discrimination. Accordingly, the legal theory upon which the FAC is based is contrary to the actual law governing blanket criminal background policies in the disparate impact discrimination context, and so fails to state a claim.

In the same vein, HUD's own position on disparate impact discrimination has evolved since the HUD Guidance was issued. In October, HUD issued its final rule[5] setting the standard for establishing disparate impact discrimination in line with *Inclusive Communities*. *HUD's Implementation of the Fair Housing Act's Disparate Impact Standard*, 85 Fed. Reg. 60288 (Oct. 26, 2020). Following *Inclusive Communities*, the final rule clarifies that it is not enough for an

---

[5] Unlike agency guidance, which is not the law, substantive agency rules have the force and effect of law. *Azar v. Allina Health Servs.*, 139 S.Ct. 1804, 1810, 204 L.Ed.2d 139 (2019).

adverse effect on "some" members of a protected class. *Id.* at 60313. Instead, a plaintiff must show a "disproportionate" effect on members of the protected class, compared to non-members. *Id.* at 60313. Further, HUD stated its clear intent that the term "robust causal link" means "that the policy or practice is the **direct cause of the discriminatory effect**." *Id.* at 60312 (emphasis added).

The FAC fails to meet these standards. There are no factual allegations showing the existence of a policy or practice that has actually been applied (i.e., that a convicted felon has been denied housing). Nor are there factual allegations showing that a policy or practice directly resulted in a discriminatory effect against multiple members of a protected class. Because the FAC improperly relies upon "bald assumptions" without "comparative data" establishing a racial disparity, and otherwise fails to connect any disparity to a specific policy, it fails to state a claim for disparate impact discrimination. *Oviedo*, 759 F. App'x at 835.

WHEREFORE, Sunrise Harbour respectfully requests that this action be dismissed for lack of subject matter jurisdiction, and that leave to amend or substitute party plaintiff be denied, for the reasons stated above. Sunrise Harbour further requests an award of its reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988(b).

## Local Rule 7.1(a)(3) Certification

I certify that I conferred with Jibrael Hindi, Esq., counsel for FFH Alliance, via email and telephone conference on December 24, 2020 in a good faith effort to resolve the subject matter jurisdiction issues raised in this motion prior to its filing. Plaintiff's counsel advises that he objects to the relief sought in this motion.

CASE NO. 1:20-cv-24443-BB

        Respectfully submitted,

By:   *Jared W. Whaley*
       Jared W. Whaley, FBN 107774
       Daniel F. Blonsky, FBN
       COFFEY BURLINGTON, P.L.
       2601 South Bayshore Drive, Penthouse One
       Miami, Florida  33133
       Telephone: (305) 858-2900
       Facsimile: (305) 858-5261
       jwhaley@coffeyburlington.com
       dblonsky@coffeyburlington.com
       groque@coffeyburlington.com
       service@coffeyburlington.com

*Counsel for Sunrise Harbour*

CASE NO. 1:20-cv-24443-BB

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by Notice of Electronic Filing generated by CM/ECF, on December 28, 2020, on all counsel or parties of record on the Service List below.

s/ *Jared W. Whaley*

| Service List | |
|---|---|
| Jibrael S. Hindi, Esq.<br>Thomas J. Patti, Esq.<br>**The Law Offices of Jibrael S. Hindi**<br>110 SE 6th Street, Suite 1744<br>Ft. Lauderdale, FL 33301<br>Telephone: (954) 907-1136<br>jibrael@jibraellaw.com<br>tom@jibraellaw.com<br><br>*Counsel for Florida Fair Housing Alliance, Inc.* | |